NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Stephen D'ONOFRIO,

    Plaintiff,

v.

BOROUGH OF SEASIDE PARK, et al.,

    Defendants.

Civ. No. 09-6220

OPINION and ORDER

THOMPSON, U.S.D.J.

    This matter has come before the Court on Plaintiff Stephen D'Onofrio's Motion [docket # 108] seeking a preliminary injunction preventing Defendant Borough of Seaside Park ("Seaside") from assessing or seeking to collect certain fines or penalties against Plaintiff and from initiating further enforcement actions against Plaintiff. Defendant Seaside opposes this motion [120]. The Court has decided this motion after considering the submissions of the parties without oral argument pursuant to Fed. R. Civ. P. 78(b). For the following reasons Plaintiff's motion is denied.

    **I.**    **BACKGROUND**

    This dispute arises out of a conflict between Plaintiff and numerous residents and public officials of Seaside Park, New Jersey. According to Plaintiff, the Defendants have engaged in a years-long plot to punish him and his former business, the Saw Mill Café ("Saw Mill"), for, *inter alia*, bringing in black performance artists to perform at the Saw Mill. Plaintiff alleges that as part of this plot—which Plaintiff refers to as "the Program"—Defendants have improperly used numerous forms of local regulatory power against him in order to harass Plaintiff and his

business, including improperly issuing fines for violations under the New Jersey Uniform Construction Code (UCC).

Plaintiff sold the Saw Mill in 2009, but several enforcement actions for violations of the UCC against the Saw Mill are still active from the time in which Plaintiff was the owner and operator. Several years ago, Plaintiff appealed Seaside's imposition of fines under the UCC to the Ocean County Construction Board of Appeals (CBA). No action was taken by the CBA, however, for numerous reasons. After initiation of the above-captioned lawsuit, an attorney representing the CBA sent a letter indicating that the CBA intended to administratively dismiss Plaintiff's appeal for lack of prosecution. A hearing on this matter was scheduled, but it has since been adjourned. At present, it is unclear whether CBA intends to administratively dismiss Plaintiff's appeal or hear it on the merits. Plaintiff claims to have "no quarrel with members of the CBA. Indeed [Plaintiff] believe[s] that if given the opportunity to consider the ***merits*** of Plaintiff's appeal the members could render an impartial decision." (Pl.'s Br. 5 (emphasis in original)).

On this pending motion, Plaintiff asks the Court to enjoin Defendant Seaside "from attempting to assess and/or collect any fines and/or penalties from Plaintiff that in any manner relate to the construction of the [Saw Mill]," (Pl.'s Br. 1–2), and for an order "baring [*sic*] Seaside Park from taking any punitive and/or retaliatory 'enforcement' action against Plaintiff pending resolution of this lawsuit, and thereafter if necessary," (*id.* 2).

## II.   ANALYSIS

Before reaching the merits of Plaintiff's motion, this Court must first determine whether it has proper jurisdiction. Seaside argues that the Court is without jurisdiction because Plaintiff essentially asks this Court to usurp the authority of the CBA, where an appeal of Defendant's assessment of fines and penalties is currently pending. Plaintiff counters that it is only asking the

Court to enjoin Seaside, not the CBA. Before discussing the ripeness of Plaintiff's pending motion, the Court notes that the relief sought in this motion is significantly narrower than—and in some ways completely distinct from—the relief sought in the Plaintiff's Complaint as a whole. For several years, the CBA took no action on Plaintiff's appeal pending before it. There appears to be multiple reasons for this. It was not until after the filing of the above captioned lawsuit, however, that the events pertinent to Plaintiff's current motion started to unfold. Until these events started to take place, Plaintiff apparently considered the matter concerning his alleged UCC violations settled. *See* (Davolos Cert., Ex. T). Therefore, it comes as no surprise that the relief requested in this pending motion was not specifically requested in Plaintiff's Complaint and that the legal issues involved in this current motion are somewhat different than those presented in the Complaint as well. This is further underscored by the voluminous statements of fact contained in each of the parties' briefs.[1]

This Court has an independent duty to determine its own subject matter jurisdiction when it is "fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1945 (2009) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); *see also Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted). Ripeness, one of several justiciability doctrines, "determines 'whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs*, 580 F.3d 185, 190 (3d Cir. 2009) (quoting *Peachlum*, 333 F.3d at 433). "A claim is not ripe for adjudication if it rests on some contingent future event." *Porter-Bey v. Bledsoe*, No. 11-

---

[1] On January 3, 2012, this Court issued an Order denying Seaside's request to file an over-length brief [119]. With that Order the Court signaled its belief that the brief-length provided for in the New Jersey Local Civil Rules is sufficient to make nearly any argument. Although Seaside abided by this Order, D'Onofrio, in his reply brief, flouted this Court's intent by disregarding L. Civ. R. 7.2. The parties are cautioned that future infractions of these rules and/or orders of the Court will not be looked upon favorably.

1322, 2012 U.S. App. LEXIS 84, *5 (3d Cir. Jan. 4, 2012) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). However, "[r]ipeness is a matter of degree whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). The pending motion raises two separate ripeness considerations: first, it asks the Court to enjoin one party in an ongoing enforcement proceeding from prosecuting their claims; and second, it asks the Court to enjoin all future uninitiated enforcement actions.

In this case, Plaintiff seeks to enjoin Seaside from attempting to assess or collect any fines or fees for Plaintiff's alleged violation of the UCC, and consequently, Plaintiff asks the Court to indirectly enjoin the appeal currently pending before the CBA. "Where a dispute arises under circumstances that permit administrative review . . . final administrative determination is favored under the ripeness doctrine." *Peachlum*, 333 F.3d at 434. This "prevent the courts, 'through avoidance of premature adjudication, from entangling themselves in abstract disagreements' over administrative problems, and enable[s] the agency to proceed without judicial interruption until an administrative determination has been formalized." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Moreover, "[i]n post-enforcement circumstances, there may be little need to hasten administrative resolution because the claim is already in the process of being resolved." *Id.* at 436.

The United States Supreme Court has cautioned, however, that "the question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable." *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 192 (1985); *see also United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226, 1232 (3d Cir. 1977) ("The doctrines of ripeness for adjudication and of exhaustion of administrative remedies are distinct and not interchangeable."); *Patsy v. Fla. Bd. of Regents*, 457 U.S. 496 (1982) (exhaustion not required under 42 U.S.C. § 1983). The doctrine of

ripeness "is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.  Plaintiff's motion satisfies neither of these aspects.

Determining whether a question is fit for judicial review requires the Court to consider "whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position . . . ." *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535–36 (3d Cir. 1988) (internal quotation marks omitted) (quoting *Action Alliance of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)).  It is clear that the action at issue in this motion is not final as the CBA appeal is still pending, and therefore neither the CBA nor Seaside can yet enforce its assessment of fines.  Furthermore, factual development is necessary in order to determine whether Plaintiff's actions constituted one or more violations of the UCC.  It is also unclear where the CBA stands as to the issue of administrative dismissal and the merits of Plaintiff's appeal.

To grant Plaintiff an injunction, this Court would have to rule that Plaintiff is likely to succeed on the merits in proving that Seaside's attempted imposition of fines is either unconstitutional or part of a larger RICO-scheme.  It would clarify the issues for the Court as to the constitutionality of Seaside's imposition of fines—both for the pending motion and the case at large—to have a determination by the CBA in hand.  *Cf. Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986) (holding that a federal court in a § 1983 action must give factual findings by a state administrative agency acting in a judicial capacity the same preclusive effect that such findings would have in state court).  As Plaintiff readily admits, "it is believed that if given the opportunity to consider the ***merits*** of Plaintiff's appeals the members [of the CBA] could render

5

an impartial decision." (Pl.'s Br. 5 (emphasis in original)). Prudence therefore weighs in favor of withholding injunctive relief at this juncture.

As the United States Court of Appeals for Third Circuit noted in *Peachlum*, "where a party suffers a concrete injury prior to final administrative disposition, such as fines or unreasonable appeal fees, the claim may be considered sufficiently ripe." *Peachlum*, 333 F.3d at 437. Without a "concrete injury" occurring prior to final administrative disposition, however, a claim is not yet ripe. *See SEIU, Local 3 v. Municipality of Mt. Lebanon* , 446 F.3d 419, 425 n.2 (3d Cir. 2006) (explaining that the *Peachlum* court held that plaintiff's claims were ripe even though administrative review was not final because the plaintiff showed that she had suffered a "concrete injury").

Although a fine has been assessed against Plaintiff in this case, it is unclear whether that fine will hold up upon administrative review. Unlike the plaintiff in *Peachlum*, the assessment of fines in this case has not imposed immediate hardship on D'Onofrio. Here, the decision of Seaside has not been formalized in the sense that Plaintiff has not been forced to pay an interim fine, and therefore the effects have not been felt in a concrete way.[2] *See id.* Plaintiff alleges that he has "expended hundreds of thousands of dollars on both legal fees and experts to prosecute his appeals before the CBA," and "[i]t would be both unreasonable and unfair for Plaintiff to have to now begin anew defending alleged UCC violations dating back to the middle of the last decade." (Pl.'s Br. 5). At this point, however, the reason that Plaintiff's appeal may face dismissal is because of his alleged lack of prosecution of the appeal. The Court does not take a position as to the validity of this claim. However, before issuing an injunction against Seaside,

---

[2] Unlike here, in *Peachlum* the plaintiff had two civil judgments entered against her, which levied over $1,000 in fines and costs. *See Peachlum*, 333 F.3d at 437. At least some of the alleged UCC violations in this case carried a $2,000 penalty per week until the alleged violation was abated. Plaintiff, however, has not yet felt the effects of this "injury" within the meaning of *Peachlum* because it is uncertain whether he will ultimately have to pay this fine at all; if the CBA finds on the merits that Plaintiff did not violate the UCC, then any ongoing penalty for lack of abatement will also be void.

the Court believes that it would be prudent to have a final CBA determination—whether that is administrative dismissal or adjudication on the merits.[3]

As the *Peachlum* court stated, "[a] municipality cannot effectively foreclose the right to appeal while simultaneously asserting that the claim is unripe." *Peachlum*, 333 F.3d at 438.  But until there is a determination by the CBA as to whether Plaintiff may prosecute his appeals, it is impossible for this Court to determine that his appeal rights are foreclosed.  In the meantime, Plaintiff is faced with no concrete injury because he no longer owns the Saw Mill (and thus, his business activities cannot be interfered with) and because he will not have to pay any fine or penalty for past UCC violations while the appeal is still pending.

"[I]n order for the parties' hardship to be sufficient to overcome prudential interests in deferral, that hardship must be both immediate and significant." *Felmeister*, 856 F.2d at 537. Plaintiff faces no interim hardship other than having to defend itself on appeal.  This is not "hardship" in the sense referred to by the Supreme Court in *Abbott*, or in *Peachlum*, where financial hardship prevented the Plaintiff from completely prosecuting an administrative appeal in all respects.  Here, there is no indication that Plaintiff is somehow unable to appeal Seaside's imposition of fines apart from the CBA's threatened administrative dismissal—a threat that has not yet, and possibly may never, come to fruition.  Moreover, the Third Circuit has specifically rejected the argument that time and expense of additional litigation is a "hardship" sufficient to overcome the prudential limitations at issue in the pending motion.  *See Nextel Comm'cns of the Mid-Atl., Inc. v. City of Margate*, 305 F.3d 188, 194 (3d Cir. 2002); *see also Felmeister*, 856 F.2d at 538.

---

[3] "The discretionary power to withhold injunctive . . . relief for prudential reasons . . . is well established." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 700 (3d Cir. 1996) (quoting *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987)).

Lastly, Plaintiff asks the Court to enjoin Seaside from instituting further enforcement actions against Plaintiff. There is no indication, however, that such actions are forthcoming or what those enforcement actions could be considering that Plaintiff no longer owns the Saw Mill. Therefore, Plaintiff's request is too vague. *See* Fed. R. Civ. P. 65(d)(1)(C) (requiring that an injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required"). Further, "[i]t must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of . . . official conduct." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)). The "threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* (citing *Golden* v. *Zwickler*, 394 U.S. 103, 109–10 (1969); *Md. Casualty Co.* v. *Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *United Public Workers* v. *Mitchell*, 330 U.S. 75, 89–91 (1947)). Importantly, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 495–96. Plaintiff's fear that future enforcement actions will be instituted against him is purely conjectural in this case as no specific threat is alleged. Therefore, injunctive relief against future enforcement actions would be improper at this time.

### III. CONCLUSION

For the foregoing reasons, it is on this 20th day of January, 2012

ORDERED that Plaintiff's Motion for a Preliminary Injunction [docket # 108] is DENIED.

    */s/ Anne E. Thompson*
    ANNE E. THOMPSON, U.S.D.J.