NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STEPHEN D'ONOFRIO,** | **Civil Action No. 09-6220 (AET)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **BOROUGH OF SEASIDE PARK, et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

As the parties are aware, currently pending before the Court are several formal motions as well as a number of informally briefed issues. In this Memorandum Opinion, the Court addresses only the Borough Defendants[1] motion for discovery to reclaim inadvertently produced privileged documents pursuant to FED.R.CIV.P. ("Rule") 26(b)(5)(B) ("motion for discovery") [Docket Entry No. 134]. Plaintiff Stephen D'Onofrio ("Plaintiff") opposes the Borough Defendants' motion. The Court has fully reviewed all arguments made in support of and in opposition to the Borough Defendants' motion. The Court considers the Borough Defendants'

---

[1]The term the "Borough Defendants" refers collectively to: the Borough of Seaside Park; Former Mayor Robert W. Matthies; Mayor Thomas E. Connors; the Seaside Park Borough Council; Susan Maday; Maryanne Palmisano; John "Jack" Moyse; Benjamin J. Kaiser; Sharon Pratico; Nancy Koury; James Jablonski; Robert Brennan; John Coughlin; Seaside Park Police Department; William A. Beining, III; Edward C. Dickson; Daniel Fitzgerald; Lt. Francis Murphy Larkin; James Leone; Brian McKay; Stephen Shadiack; Brian Jankowski; Seaside Park Municipal Planning Board; Faith Liguori; Kathleen Hughes; Anthony DiCaro; Robert Bellantoni; Seaside Park Municipal Zoning Board; Andrew Sbordone; Martin Wilk, Jr.; Kenneth Deshay; Michael Giuliano; Francis Losey; Michael Tierny; Raymond Sites; Geoffrey N. Schwartz; Seaside Park Code Enforcement Department; James Anderson; Robert Nora; Rejean Laliberte; Gary Swirczynski; Richard Barbarise; and Charles Hollins.

motion without oral argument pursuant to Rule 78.  For the reasons set forth more fully below,

the Borough Defendants' motion for discovery is DENIED.

## I.    Background

The parties and the Court are all familiar with the facts underlying this litigation. As such,

they are not restated at length herein.  Instead, the Court focuses mainly on the facts relevant to

the pending motion for discovery.

Plaintiff is the former owner and operator of an establishment located on the boardwalk in

the Borough of Seaside Park known as the SawMill Café (the "SawMill").  In this matter,

Plaintiff has sued numerous individuals and entities associated with the Borough of Seaside

Park.[2]  Essentially Plaintiff claims that these individuals and entities inappropriately engaged in

---

[2]Following is a complete list of all of the defendants initially sued in this matter.  As noted, two have since been terminated from this case:  (1) the Borough of Seaside Park; (2) Former Mayor Robert W. Matthies; (3) Mayor Thomas E. Connors; (4) the Seaside Park Borough Council; (5) Susan Maday (Borough Council Member); (6) Maryanne Palmisano (Borough Council Member); (7) John "Jack" Moyse (Borough Council Member); (8) Robert Martucci (Borough Council Member); (9) Benjamin J. Kaiser (Borough Council Member); (10) Sharon Pratico (Borough Council Member); (11) Nancy Koury (Borough Council Member); (12) James Jablonski (Borough Council Member); (13) Frank Fritz McHugh; (14) Robert Brennan (Borough Council Member); (15) John Does 1-20 (Seaside Park Council Members); (16) Jay Delaney, Jr. (Former Clerk and Borough Administrator); (17) John Coughlin (Former Acting Clerk and Borough Administrator); (18) Julie Keizer (Clerk and Borough Administrator); (19) CMX Engineering, Inc.; (20) Robert K. Forsyth (P.E.); (21) John Maczuga (P.E.); (22) John Does 21-40 (Seaside Park Council, Consultants, Agents, Representatives, Employees and/or Attorneys); (23) Seaside Park Police Department; (24) William A. Beining, III (Former Chief); (25) Edward C. Dickson (Lt. and/or Chief); (26) Alex Condos (Sergeant); (27) James Citta (Former Sergeant); (28) James Boag (Sergeant); (29) Daniel Fitzgerald (Patrolman); (30) Lt. Francis Murphy Larkin; (31) James Leone (Patrolman); (32) Brian McKay (Sergeant); (33) Stephen Shadiack (Patrolman); (34) Brian Jankowski (Patrolman); (35) John Does 41-60 (Members of Seaside Park Police Department); (36) Seaside Park Municipal Planning Board; (37) Joseph J. Stack (Planning Board Chairman); (38) John A. Krayesky (Planning Board Vice-Chairman) (Terminated 4/23/2010); (39) Donald Kadlac (Planning Board Member) (Terminated 5/27/2010); (40) Faith Liguori (Planning Board Member); (41) Kathleen Hughes (Planning Board Member); (42) Patricia Degutis (Planning Board Member); (43) Anthony DiCaro

tortious, fraudulent and extortionate conduct which violated Plaintiff's right to control and operate the SawMill.  Plaintiff specifically asserts violations of the Equal Protection and Due Process Clauses of the 14th Amendment, the 1st Amendment, 42 U.S.C. § 1983 of the Civil Rights Act; 42 U.S.C. § 1985 of the Civil Rights Act; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; and N.J.S.A. 2C:41-1 *et seq.* ("New Jersey RICO"), which is the New Jersey statute that prohibits racketeering activity.  Defendants deny all of Plaintiff's allegations.

As part of discovery in this matter, the Borough Defendants reviewed the contents of 14 boxes of documents for possible production to Plaintiff.  Of these 14 boxes, 8 came directly from the Borough Defendants (the "Borough documents").  The other 6 boxes (the "Ryan/McKenna

---

(Planning Board Member); (44) Robert Bellantoni (Planning Board Member); (45) John Vanna (Planning Board Member); (46) John Does 61-80 (Seaside Park Planning Board Members, Consultants, Agents, Representatives, Employees and/or Attorneys); (47) Seaside Park Municipal Zoning Board; (48) Andrew Sbordone (Zoning Board Chairman); (49) Martin Wilk, Jr. (Zoning Board Member); (50) Kenneth Deshay (Zoning Board Member); (51) Michael Giuliano (Zoning Board Member); (52) Francis Losey (Zoning Board Member); (53) Michael Tierny (Zoning Board Member); (54) Edward Gallagher (Former Zoning Board Member); (55) Raymond Sites (Former Zoning Board Member); (56) Geoffrey N. Schwartz (Zoning/Code Enforcement Officer); (57) John Does 81-100 (Seaside Park Zoning Board Members, Consultants, Agents, Representatives, Employees and/or Attorneys); (58) Seaside Park Code Enforcement Department; (59) William Schultz (Construction Official); (60) James Anderson (Subcode Official); (61) Robert Nora (Subcode Official); (62) Rejean Laliberte (Subcode Official); (63) Gary Swirczynski (Subcode Official); (64) Richard Barbarise (Subcode Official); (65) John Does 101-120 (Seaside Construction Code Enforcement Department and/or Building Department Members, Consultants, Agents, Representatives, Employees and/or Attorneys); (66) Taxpayers Association of Seaside Park; (67) John Tweed (Director, Officer, Trustee and/or Member of Taxpayers Association of Seaside Park); (68) Thomas Hourihan (President of Taxpayers Association of Seaside Park); (69) John Does 121-140 (Taxpayers Association of Seaside Park, Members, Consultants, Agents, Representatives, Employees and/or Attorneys); (70) Seaside Park Democratic Club; (71) Seaside Park Republican Club; (72) ABC Corporations 1-20; (73) XYZ Partnerships 1-20; (74) John/Jane Does 141-160; (75) Charles Hollins (Planning Board Member); and (76) Ryan Stack (Patrolman).

3

documents") came from the files of Guy P. Ryan, Esq. and Michael J. McKenna, Esq., two attorneys who represented the Borough Defendants in several matters underlying this litigation. Before producing the information contained in the Borough documents and Ryan/McKenna documents counsel for the Borough Defendants ("Brown & Connery" or "counsel") undertook a multi-attorney review of same during which counsel spent approximately 250 hours reviewing the documents for responsiveness to Plaintiff's requests and privilege.[3]

While associates from Brown & Connery were responsible for reviewing a significant portion of the Borough documents, a partner undertook the review of the Ryan/McKenna documents for privilege. In conducting this review, the partner personally reviewed each of the Ryan/McKenna documents for privilege, made notes concerning the documents flagged as privileged and then confirmed all privileged notations with Mr. Ryan or Mr. McKenna. The partner then instructed a clerical employee to separate the privileged Ryan/McKenna documents from the non-privileged Ryan/McKenna documents based on the designations included in her detailed notes. The partner further instructed the clerical employee to have the privileged and non-privileged documents separately Bates stamped and to have the non-privileged documents burned onto a disc to be produced to Plaintiff. The privileged documents were to be withheld and set aside so that they could later be identified on a proper privilege log.

Believing that the aforementioned process had been followed, on August 12, 2010, the Borough Defendants produced what at the time they believed to be the non-privileged Borough documents and non-privileged Ryan/McKenna documents to Plaintiff. While counsel did review

_____

[3]For purposes of this Opinion, unless otherwise defined, the term "privilege" refers to the attorney-client privilege and includes attorney work product.

the final form of the disc of non-privileged documents prior to producing same to Plaintiff, counsel did not conduct a page-by-page review of the disc.  Counsel argues that such a review was not required and would have been impracticable given the volume of documents being produced.  Indeed, counsel notes that approximately 30,000 pages of material were contained on the August 12, 2010 disc.

Unfortunately, unbeknownst to counsel, the clerical employee tasked with separating the privileged Ryan/McKenna documents from the non-privileged Ryan/McKenna documents only did so for the first 2 of the 6 boxes of Ryan/McKenna documents.  As a result, all of the information the partner designated as privileged from the latter 4 boxes of Ryan/McKenna documents was not withheld as intended, but instead was produced to Plaintiff.  Again, counsel did not recognize that privileged information was included on the disc produced to Plaintiff because counsel did not conduct a page-by-page review of the disc before producing same.

After the disc was produced on August 12, 2010, the clerical employee who assisted with the production of the Ryan/McKenna documents was reassigned and a new secretary began to work for the partner at Brown & Connery.  As part of assisting the partner in this matter, the new secretary reviewed the format of the disc produced on August 12, 2012.  As part of this review, the secretary realized two things.  First, she noticed that some of counsel's electronic comments, which were entitled to be withheld as privileged, appeared on the documents produced on the disc.  Second, she realized that the information contained on the disc could be more efficiently organized – as originally produced each document and sometimes individual pages of a single, larger document were scanned as separate and distinct pdf files.

In light of these discoveries, the Borough Defendants recalled the August 12, 2010 disc. The partner instructed her new secretary to create a new disc, sans attorney comments and with merged pdf files for a cleaner production. Instead of having numerous individual pdf files, the new disc would contain two pdf files, one for the non-privileged Borough documents and the second for the non-privileged Ryan/McKenna documents. The Borough Defendants produced this new and more efficiently organized disc on November 4, 2010.

The Borough Defendants claim that at the time they produced the November 4, 2010 disc they again did not recognize that privileged Ryan/McKenna documents were contained on same because counsel did not substantively re-review the documents being produced. Instead, counsel merely directed its clerical staff to remove the electronic comments accidentally included in the original disc and to merge the numerous individual pdf files to create a cleaner, more efficient production. As a result, counsel contends that it did not become aware of the inadvertent production of privileged Ryan/McKenna documents in producing the November 4, 2010 disc.

Counsel similarly argues that it did not become aware of the disclosure of privileged information in December 2010 when Plaintiff informed the Borough Defendants that the November 4, 2010 disc was unreadable. Indeed, counsel claims that the minor technical difficulty identified by Plaintiff on December 9, 2010, i.e. that the disc was unreadable, did not necessitate a substantive re-review of the information produced. Instead, the Borough Defendants simply needed to reburn the November 4, 2010 disc, which they did and produced same to Plaintiff on December 10, 2010, the day after Plaintiff informed them that the second disc was unreadable. Further, while counsel did conduct a quality control audit of the documents being reproduced on the December 10, 2010 disc, counsel argues that this audit was performed

6

simply to confirm that the same documents were being produced on this disc as were produced on the August 12, 2010 disc and which were attempted to be produced on the November 4, 2010 disc. Counsel claims that this review was not substantive in nature and was delegated to a clerical employee. Counsel emphasizes that the audit was not substantive in nature and did not entail a re-review for privilege.

In late November 2010, counsel for the Borough Defendants began creating the privilege logs for the documents initially produced on August 12, 2010. An associate at Brown & Connery was responsible for creating the logs and before they were produced to Plaintiff, a partner reviewed the logs for "description information." (Cert. of Karen A. McGuinness [Docket Entry No. 134-2] (the "McGuinness Cert.") ¶ 16). In generating and producing the aforementioned privilege logs, counsel did not realize that there were fewer privilege entries for the Ryan/McKenna documents than there should have been based on the partner's review of said documents. Counsel argues that they did not detect this discrepancy both because of the amount of time that had passed between when the Ryan/McKenna documents were reviewed and when the privilege logs were generated and because of the shear volume of documents produced by the Borough Defendants.

On March 15, 2011, Plaintiff informed the Borough Defendants that there was a problem with the information contained on the third disc, i.e. the disc produced on December 10, 2010. Specifically, Plaintiff noted that it appeared that the documents burned on the third disc were out of order. In response to Plaintiff's complaints, counsel for the Borough Defendants reviewed the information as produced on the December 10, 2010 disc against the information as originally scanned. From this review, counsel determined that Plaintiff was correct: documents on the

December 10, 2010 disc were produced out of order.  In reaching this conclusion, counsel did not review the entire contents of the December 10, 2010 disc.  Instead, counsel simply reviewed a small sampling from the Borough documents, not the Ryan/McKenna documents.  Counsel claims that this sampling was all that was necessary to confirm that a problem existed with the December 10, 2010 disc.

After confirming that there was, in fact, a problem with the December 10, 2010 disc, counsel for the Borough Defendants requested that personnel from the firm's Information Technology Department ("IT") identify the cause of the problem as well as which portions of the disc were affected so that the problem could be rectified.  IT reviewed the December 10, 2010 disc and determined that the problem with the disc was limited to only the Borough documents. The Ryan/McKenna documents were not affected.  Apparently, "the problem was attributable to a computer glitch due to the manner in which the Borough documents were scanned by the vendor and then uploaded onto [counsel's] system and subsequently bate stamped." (McGuinness Cert. ¶ 30).  The Ryan/McKenna documents were processed differently and thus unaffected.

Counsel for the Borough Defendants corrected the problem identified by Plaintiff on March 15, 2011 by restoring the affected documents to their original order and reproducing those documents on a fourth disc in April 2011.  Counsel argues that in correcting the problem with the December 10, 2010 disc, they never intended to re-review any of the documents for privilege. Counsel, however, states that in reorganizing the documents, the partner working on this matter identified that certain documents that had been previously flagged as privileged had not, in fact,

been withheld, but had mistakenly been produced.[4]  As a result, the partner added said documents to the Borough Defendants' privilege logs and did not include them on the April 2011 disc. Counsel claims that the fact that certain privileged information from the Borough documents had been mistakenly produced to Plaintiff did not trigger a re-review of the Ryan/McKenna documents because the partner had personally reviewed all of the Ryan/McKenna documents for privilege whereas a substantial portion of the Borough documents had been reviewed by associates.  As a result, counsel argues that they had no reason to believe that privileged Ryan/McKenna documents had been produced.

On January 12, 2012, Plaintiff filed a reply brief in further support of his motion for a preliminary injunction [Docket Entry No. 121].  Plaintiff attached numerous exhibits to that briefing, including Exhibits G, H & I, documents first produced by the Borough Defendants on the August 12, 2010 disc.

On January 13, 2012, the Borough Defendants began their review of Plaintiff's reply brief.  During that review, counsel saw that Plaintiff attached Exhibits G, H & I to his reply. Exhibits G, H & I were Ryan/McKenna documents that the partner at Brown & Connery had marked as privileged.  Based on this disclosure, counsel for the Borough Defendants re-reviewed its production and recognized that approximately 1000 pages of privileged Ryan/McKenna documents had been produced.  Consequently, on January 18, 2012, counsel for the Borough Defendants informed all other parties of this inadvertent production and asked that they discard and not use said documents pursuant to Rule 26(b)(5)(B).

---

[4]In light of the fact that only the Borough documents had been affected by the computer glitch, there was no need for the Ryan/McKenna documents to be reorganized.

II.     **The Parties' Arguments**

A.      **The Borough Defendants**

Under these circumstances, the Borough Defendants argue that they should be permitted to reclaim the privileged Ryan/McKenna documents because their disclosure of same was inadvertent.  In the first instance, the Borough Defendants claim that the documents they seek to reclaim are clearly privileged.  In this regard, the Borough Defendants argue that all of the documents they seek to reclaim represent attorney-client communications made in Messrs. Ryan and/or McKenna's representation of the Borough in the disputes underlying this lawsuit or protected attorney work product generated in connection with same.  The Borough Defendants additionally claim that none of the documents were discussed in open meetings or produced in the underlying disputes.  Further, they note that their privilege log produced on February 10, 2012 sets forth their specific claims of privilege.

The Borough Defendants next turn to the alleged inadvertent nature of their disclosure. In this regard, the Borough Defendants claim that the production of the privileged Ryan/McKenna documents was clearly unintentional and therefore inadvertent.  Further, the Borough Defendants argue that their attorneys took reasonable steps to prevent the disclosure of privileged information.  In this regard, the Borough Defendants note that counsel engaged in a multiple-attorney privilege review of the documents prior to their production.  Indeed, the Borough Defendants note that approximately 250 hours of attorney time was spent reviewing the documents prior to their production.

In addition, the Borough Defendants claim that the disclosure of the privileged Ryan/McKenna documents was not unreasonably large.  Specifically, the Borough Defendants

10

claim that as part of discovery in this litigation, they produced nearly 100,000 pages of documents. They note that their disclosure of the privileged Ryan/McKenna documents, which involved approximately 1,000 pages of documents, amounts to only 1% of their entire production.

The Borough Defendants also contend that after they learned of the inadvertent disclosure they acted promptly to rectify the problem. In this regard, the Borough Defendants claim that within five days of learning of the inadvertent disclosure, they notified all other parties of same and requested that the inadvertently produced information be destroyed or sequestered. Moreover, for the reasons set forth above, the Borough Defendants argue that they had no reason to be believe that privileged Ryan/McKenna documents had been inadvertently produced until Plaintiff filed Exhibits G, H and I in connection with his reply brief in further support of his motion for a preliminary injunction.

Further, the Borough Defendants argue that the interests of justice favor a finding that no waiver of privilege has been made. First, the Borough Defendants note that they have always maintained the inadvertently produced, privileged Ryan/McKenna documents as privileged. Indeed, they point out that additional copies of several of the inadvertently produced documents were in fact logged as privileged in other instances. Second, the Borough Defendants argue that finding a waiver would derogate the policy of full and open attorney-client communications which gives rise to the existence of the privilege in the first place. Third, the Borough Defendants argue that a finding of waiver would prejudice their ability to defend against Plaintiff's claims in this matter because Plaintiff will continue to use and cite to the documents outside of their proper context. Fourth, the Borough Defendants claim that Plaintiff has no

11

legitimate interest in keeping the inadvertently produced documents.  In this regard, the Borough

Defendants argue that there is no inherent fairness interest in permitting Plaintiff to keep and use

the documents.  The Borough Defendants claim that this is particularly true in light of the fact

that some of the documents were marked "attorney-client privileged" and, as such, Plaintiff knew

or should have known that the documents were inadvertently produced.  Fifth, the Borough

Defendants argue that Plaintiff breached his ethical duties under New Jersey's Rule of

Professional Conduct ("RPC") 4.4(b)by failing to alert them to their inadvertent disclosure.

### B.      Plaintiff

In contrast, Plaintiff argues that the Borough Defendants should not be permitted to

reclaim the allegedly privileged Ryan/McKenna documents that they produced.  As an initial

matter, Plaintiff claims that the Borough Defendants have not established that any of the

documents they seek to reclaim are, in fact, privileged.  Further, Plaintiff argues that the Borough

Defendants' disclosure of the allegedly privileged Ryan/McKenna documents was not

inadvertent.  In this regard, Plaintiff contends that inadvertent does not simply equate to

unintentional.  Instead, Plaintiff argues that the Borough Defendants, as the party resisting

waiver, must demonstrate that they took reasonable precautions to avoid the inadvertent

disclosure of the allegedly privileged documents.

Here, Plaintiff claims that the Borough Defendants did not take reasonable steps to

prevent the disclosure of the allegedly privileged Ryan/McKenna documents.  Indeed, Plaintiff

notes that the Borough Defendants produced said documents on three separate occasions, the last

of which occurred after the Borough Defendants conducted an audit of the information contained

on the disc being produced.  Moreover, Plaintiff argues that the Borough Defendants inexplicably

failed to conduct a second review of the produced Ryan/McKenna documents after they learned

that on three separate occasions they had produced 728 pages of privileged Borough documents.

Further, Plaintiff claims that the documents currently in dispute represent a significant

portion of the Borough Defendants' production.  In this regard, Plaintiff notes that, in total, the

Borough Defendants produced 12,318 pages of Ryan/McKenna documents and that the disputed

documents make up 872 of these pages or 7.1% of said production.  In addition, Plaintiff argues

that the Borough Defendants failed to act promptly to address the disclosure of the allegedly

privileged Ryan/McKenna documents because the Borough Defendants should have known long

before January 13, 2012 that these documents had been disclosed and the trigger for promptness

is when the party seeking to avoid waiver knew or should have known that the problem existed.

Here, Plaintiff argues that the Borough Defendants should have learned of their disclosure in

November 2010 or at the latest in March 2011 when they discovered that other privileged

information contained on the same disc as the allegedly privileged Ryan/McKenna documents

was produced.

Finally, Plaintiff argues that the interests of justice favor the denial of the Borough

Defendants' motion.  In this regard, Plaintiff notes that at the time the Borough Defendants

initially sought to reclaim the allegedly privileged Ryan/McKenna documents on January 18,

2012, he had already relied on the documents for over a year and a half.

## III.   Analysis

### A.   Standard of Review

Motions to reclaim documents that have allegedly been inadvertently produced are

governed by FED.R.EVID. ("FRE") 502.  This Rule provides as follows:

**Rule 502.  Attorney-Client Privilege and Work Product;**
**Limitations on Waiver**

> **(b) Inadvertent Disclosure**.  When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
>> (1) the disclosure is inadvertent;
>>
>> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>>
>> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Rule 26(b)(5)(B) states that:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.  The producing party must preserve the information until the claim is resolved.

In determining whether inadvertently produced documents should be returned, the Court engages in a two-step analysis.  First, the Court must determine whether the documents at issue are, in fact, privileged.  *Peterson v. Bernardi*, 262 F.R.D. 424, 427 (D.N.J. 2009).  Second, if privileged, then the Court must determine whether the aforementioned three prongs of FRE 502(b) have been met.  *Id*.  The disclosing party has the burden of proving that the elements of FRE 502(b) have been satisfied.  *Id*.  Similarly, the burden of proving that a privilege exists rests

with the party asserting the privilege. *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305-06 (D.N.J. 2008).  FRE 502 does not alter the placement of same. *Peterson*, 262 F.R.D. at 427.

The approach set forth in FRE 502(b) is essentially the same as that used in *Ciba-Geigy Corp. v. Sandoz Ltd.*, 916 F.Supp. 404, 411 (D.N.J. 1995).  Under the approach outlined in *Ciba-Geigy*, the Court engages in a multi-factor analysis to determine whether a waiver occurred. Factors considered are "'(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its error.'" *Id*. (quoting *Advanced Medical, Inc. v. Arden Medical Sys., Inc.*, Civ.A. No. 87-3059, 1988 WL 26128 at *2 (E.D. Pa. July 18, 1988)).

B.      **Discussion**

As noted above, the Court begins its analysis by determining whether the inadvertently produced Ryan/McKenna documents are privileged.  In this regard, the Court notes that the Borough Defendants did not go document by document or category of documents by category of documents through the Ryan/McKenna documents they seek to reclaim to explain why said documents are privileged or otherwise protected from discovery.  Instead, the Borough Defendants generally argue that the documents are protected from discovery because they are all either attorney-client communications made in Messrs. Ryan and McKenna's representation of the Borough in the disputes underlying this litigation or protected work product generated in

15

connection with same.  The Borough Defendants also attach their privilege log dated February

10, 2012 that corresponds to the Ryan/McKenna documents they seek to reclaim.

While the Borough Defendants' showing is not the strongest, the Court agreed to review

all of the documents subject to this motion *in camera*.  Based on the information provided by the

Borough Defendants as well as the Court's review of the Ryan/McKenna documents subject to

this motion, the Court makes the following findings:

1.    No privilege has been asserted with respect to SP 24327; SP 24963; SP 25008;
      and SP 25049.  Indeed, the Nature of Privilege/Redaction column on the Borough
      Defendants' February 10, 2012 privilege log indicates that the aforementioned
      documents have been "RELEASED."  As such, to the extent the Borough
      Defendants seek to reclaim these documents, that request is denied.

2.    No privilege has been asserted with respect to SP 21037-38; SP 21039-40; SP
      26151-52; SP 26166-67; SP 26199-208; SP 26210-11; and SP 26209.  Instead, the
      Nature of Privilege/Redaction column on the Borough Defendants' February 10,
      2012 privilege log states that these documents are "NOT RELEVANT."  While
      parties to a litigation need only produce relevant information (*see* Rule 26(b)(1)),
      nothing in FRE 502 or the pertinent case law interpreting same suggests that the
      Rule was designed to permit a party to reclaim documents that are merely
      irrelevant to the pending matter.  In fact, FRE 502 explicitly provides that "[t]he
      following provisions apply, in the circumstances set out, to disclosure of a
      communication or information **covered by the attorney-client privilege or
      work-product protection**."  (Emphasis added).  Similarly, Rule 26(b)(5)(B)
      pertains to information produced in discovery that is subject to a claim of
      "**privilege or of protection as trial-preparation material**[.]" (Emphasis added).
      Here, no such claims were made.  Instead, the documents are merely classified as
      "NOT RELEVANT."  The Court finds the documents' alleged lack of relevance
      to be an insufficient basis on which to permit the Borough Defendants to reclaim
      same.  As a result, the Borough Defendants' request to clawback these documents
      is denied.

3.    It does not appear the any privilege has been asserted with respect to SP 18702-
      07; SP 18728-32; 18761-66; 19051-56; 26109 or 26610-14.[5]  Instead, the Nature

_____

      [5]In conducting Its *in camera* review of the subject Ryan/McKenna documents, the Court
was unable to locate SP 26610-26614.  It appears that this document was not submitted to the
Court.  Nevertheless, even without specifically reviewing this particular document, the Court is

of Privilege/Redaction column on the Borough Defendants' February 10, 2012 privilege log for these documents reads "POLICE RECORDS - PROTECTIVE ORDER."

The Court notes that on January 19, 2012, It entered a Discovery Confidentiality Order ("DCO") [Docket Entry No. 125] that had been agreed upon by the parties. Pursuant to the terms of the DCO, the DCO applies only to police related documents.  (DCO ¶ 2).  All of the aforementioned documents designated as "POLICE RECORDS - PROTECTIVE ORDER" appear to qualify as police related documents that, absent some other issue, would be subject to the DCO.

Here, while the Borough Defendants do not explicitly so state, the Court assumes that they do not seek to actually reclaim the aforementioned documents, but instead seek to ensure that said documents are subject to the DCO.[6]  The Court additionally assumes that the Borough Defendants are doing so because Plaintiff will not agree to the retroactive protection of these documents under the DCO.[7]  In this regard, the Court notes that pursuant to its explicit terms, the DCO applies only to police related documents produced by Defendants after its entry or police related documents produced by Defendants before the entry of the DCO that were identified within 15 days of the date of the entry of the DCO and which Plaintiff agrees will be retroactively subject to the DCO.  (DCO ¶ 4).  The documents at issue here were produced approximately 17 months before the DCO was entered.  As a result, absent Plaintiff's approval or Court Order, the aforementioned documents would not be subject to the protection afforded by the DCO.

Despite the fact that SP 18702-07; SP 18728-32; 18761-66; 19051-56; 26109 and 26610-14 were produced nearly a year and a half before the DCO was entered, the Court shall require that these documents be afforded retroactive protection under same.  As a result, while the Borough Defendants shall not be permitted to reclaim

---

confident with Its determinations as expressed herein.

[6]To the extent the Court is incorrect and the Borough Defendants seek to reclaim these documents, the Borough Defendants' request is denied.  The Borough Defendants have proffered no arguments to suggest that these police records are privileged or subject to attorney work product protection and, as explained with respect to the documents identified in category 2, FRE 502 and Rule 26(b)(5)(B) only apply where claims of attorney-client privilege and or attorney work product protection have been made.

[7]Neither party has explicitly stated that this is the case; instead, the Court is inferring same from the information presented in the Borough Defendants' motion and Plaintiff's opposition thereto.

these documents, Plaintiff, in using these documents, must treat them as protected material under the DCO.

4.       The Borough Defendants claim that the following documents are protected by the attorney-client privilege: <u>SP 19327-28; SP 25053-54; SP 19669; SP 19674; SP 19673; SP 19682; SP 24327; SP 24963; SP 25008; SP 25049; SP 24901; SP 25005; SP 25065; SP 25066; SP 25067; SP 25072; and SP 26457</u> (collectively the "Clive Samuels documents"). These documents all involve communications with engineers at Clive Samuels and Associates, Inc. ("Clive Samuels"). The Borough Defendants' claims of privilege regarding the Clive Samuels documents turn on whether Clive Samuels was the Borough's expert in one of the underlying disputes that forms the basis for part of this case or an independent court-appointed expert. The Borough Defendants argue that Clive Samuels was their expert whereas Plaintiff contends that Clive Samuels was an independent, court-appointed expert.

The Court has reviewed the information presented by the parties on this issue and finds that Clive Samuels was the Borough's expert. This conclusion is based largely on this Court's independent review of the transcript of proceedings that occurred on October 6, 2006 before Hon. Frank A. Buczynski, Jr., J.S.C., as well as the Order entered by Judge Buczynski immediately after the hearing. In light of the Court's decision that Clive Samuels was the Borough's expert, the Court finds that the aforementioned documents are privileged.

5.       The Borough Defendants claim that all of the remaining documents entered on the February 10, 2012 privilege log are protected by the attorney-client privilege. These documents include: <u>SP 1422; SP 16634-40; SP 16666-67; SP 16668; SP 16773-76; SP 16778-81; SP 16740-42; SP 16743-45; SP 16770; SP 16771; SP 16727-30; SP 16731-36; SP 16738; SP 16785-86; SP 16788; SP 16789-90; SP 16799-800; SP 16801-02; SP 16803-04; SP 16812-13; SP 16850; SP 17492-94; SP 17495-510; SP 17512-50; 17568-87l SP 18198-209; SP 18212-18; SP 18989-19037; SP 19507; SP 19512; SP 19695-99; SP 19702-28; SP 19744-54; SP 19758-72; SP 19782-86; SP 20106; SP 21113-19; SP 24298-312; SP 21025-36; SP 24298-312; SP 25381-83; SP 25385-90; SP 25381-83; SP 25385-90; SP 25500-18; SP 26459-61; SP 17568-77; SP 17594-601; SP 17602-12; SP 17613-28; SP 17635-37; SP 17638; SP 17651; SP 17652; SP 17653; SP 17654-60; SP 17783-86; SP 18005-06; SP 18039; SP 18985; SP 18087; SP 18086; SP 18095; SP 18096; SP 18097; SP 18373; SP 18560-62; SP 18661-63; SP 18583; SP 18592; SP 18614-15; SP 18625-26; SP 18629-30; SP 18632-33; SP 18635-36; SP 18659-60; SP 18664-71; SP 18874; SP 19118-20; SP 19125; SP 19372; SP 19373; SP 19374-75; SP 19390; SP 19461; SP 19475; SP 19895; SP 19903; SP 19498; SP 19508; SP 19509; SP19533; SP 19536; SP 19537; SP 19556; SP 19614; SP 20088; SP 19687; SP 19688; SP 20090; SP 20091; SP 20092; SP</u>

20093; SP 20094; SP 20147-48; SP 20161; SP 20162; SP 20178-82; SP 20223-26; SP 25456-59; SP 25463-70; SP 25477-85; SP 25491-98; SP 20933; SP 20937-44; SP 20945-47; SP 20955; SP 21047-48; SP 21141; SP 24327; SP 24963; SP 25008; SP 25049; SP 24832; SP 24901; SP 25005; SP 25058; SP 25072; SP 25081; SP 25241; SP 25338; SP 25425; SP 25431; SP 25433-34; SP 25436-37; SP 25439; SP 25443; SP 25448-49; SP 25450;[8] SP 26104; SP 26133; SP 26151-52; SP 26157; SP 26183-86; SP 26226; SP 26227-60; SP 26261; SP 26262; SP 16845; SP 17557; SP 17629-30; SP 17981; SP 18030-31; SP 18033; SP 18188-96; SP 18220-52; SP 18254-58; SP 18263-66; SP 18271; SP 19893; SP 19919-57; SP 20043-44; SP 20104; SP 20720; SP 21165; SP 24976; SP 14654;[9] SP 14657; SP 14658; SP 15661-72; SP 14673; SP 14674; SP 14678-79; SP 14682; SP 14686; SP 14689; SP 14692; SP 14693; SP 14698; SP 14735; SP 14763; SP 14764; SP 14773; SP 14790; SP 14794; SP 14803; SP 14808; SP 15208; SP 15214; SP 15217; SP 15222; SP 17853; SP 17858; SP 17861; SP 17862; SP 17864; SP 17950; SP 18046; SP 18407; SP 18408; SP 18436; SP 18445; SP 18466; SP 19061; SP 19077; SP 19406; SP 19611; SP 19700; SP 19734; SP 19906; SP 21162; SP 21166; SP 21172; SP 21349; SP 21466; SP 21473-74; SP 21494; SP 21500; SP 21504; SP 21597; SP 21601-03; SP 21625; SP 22068; SP 22362; SP 22365-66; SP 22369-82; SP 22386-87; SP 22390; SP 22394; SP 22397; SP 22400-01; SP 22406; SP 22442; SP 24296; SP 24316; SP 24322; SP 24935; SP 25123; and SP 25342 (the "Remaining documents").  As noted above, the Court has reviewed all of these documents *in camera*.  Based on the Court's *in camera* review, the Court finds that these documents are properly identified as privileged.[10]

———————————————

[8]The Court notes that an entry for this particular document does not appear on the February 10, 2012 privilege log submitted by the Borough Defendants.

[9]The remaining documents including the foregoing were not withheld in their entirety but produced in redacted format.

[10]The Court notes that in his motion to compel, Plaintiff raises additional reasons, other than waiver through their production to him, why some of these documents are not properly subject to the Borough Defendants' claims of privilege.  Examples of such reasons include, but are not limited to, the crime-fraud exception to the attorney-client privilege, the fact that the Borough Defendants allegedly placed certain of these otherwise protected communications at issue and that a waiver of the privilege occurred because the communications were shared with unnecessary third-parties.  The Court has not considered these arguments in considering the Borough Defendants' motion for discovery, but shall do so in deciding Plaintiff's motion to compel.  As a result, the findings described above are made without prejudice to the Court's later consideration of Plaintiff's motion to compel.  The same holds true with respect to the Court's determination concerning the Clive Samuels documents.

Having determined that the Clive Samuels documents and the Remaining documents are privileged, the Court next addresses whether these categories of documents were inadvertently produced under Rule 502(b) and the multi-factor test outlined in *Ciba-Geigy*. Because the Court has determined that the other categories of Ryan/McKenna documents subject to this motion are not privileged, the Court need not reach the question of whether they were inadvertently produced. *Peterson*, 262 F.R.D. at 427 (holding that "[i]t is axiomatic that FRE 502 does not apply unless privileged or otherwise protected documents are produced.") The Court, however, notes that for practical purposes the remaining analysis would apply equally to these other categories of documents had the Court determined that they were privileged.

The Court has no doubt that the Borough Defendants' production of the Clive Samuels and Remaining documents was inadvertent in the sense that their production was unintentional. However, while necessary to a finding under FRE 502(b) that the production of these documents does not amount to a waiver, because "every inadvertent disclosure is an unintentional disclosure[,] the fact that the Borough Defendants have convinced the Court that said disclosure was unintentional "does not go far in establishing the absence of waiver." *Ciba-Geigy*, 916 F.Supp. at 412. Instead, the other factors would also have to point to an absence of waiver. *Peterson*, 262 F.R.D. at 429 (citing *Ciba-Geigy*, 916 F.Supp. at 411) (noting that producing party's "subjective intent is not controlling."); *Sensient*, 2009 WL 2905474, at *4 (same).

As to these other factors, the Court finds that the Borough Defendants initially took reasonable steps to prevent the disclosure of their privileged information. In this regard, the Court notes that counsel for the Borough Defendants engaged in a multi-attorney review of the Borough documents and Ryan/McKenna documents devoting approximately 250 hours of

20

attorney time to reviewing these documents for privilege.  Moreover, given the likelihood that privileged information would be contained in the Ryan/McKenna documents, a partner at Brown & Conner personally reviewed all of the Ryan/McKenna documents for privilege.  That partner took detailed notes concerning which documents she believed were privileged, confirmed the privilege designations with counsel in the matters underlying this lawsuit and marked in her notes all privileged documents that were to be withheld from production.  This privilege review was more than adequate and certainly indicates that reasonable precautions were taken to prevent the inadvertent disclosure of privileged information.  *Cf. Peterson*, 262 F.R.D. at 429 (finding that conclusory statement that privilege review was conducted without any specific information concerning when review occurred, how much time was spent reviewing documents, what documents were reviewed or other basic details of review process is not informative and does little to establish reasonableness of precautions taken to avoid disclosure).

Also reasonable was counsel's decision to delegate to a non-attorney, clerical employee the task of separating the flagged, privileged Ryan/McKenna documents from the rest of the production.  Indeed, the Court finds no reason why, after counsel invested substantial resources in reviewing the Borough and Ryan/McKenna documents for privilege, the task of physically separating the documents flagged as privileged from the non-privileged documents and sending the non-privileged information to a vendor to be scanned on a disc for production would also have to be performed by an attorney or paralegal.  Instead, this is exactly the type of task that could reasonably be assigned to clerical staff.

Moreover, the Court finds that the Borough Defendants were not obligated to review the disc before producing same to Plaintiff.  Indeed, as explicitly noted in FRE 502(b)'s Explanatory

21

Note, "[t]he rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake." Thus, having implemented reasonable steps to prevent the inadvertent disclosure of privileged information, the Borough Defendants were permitted to rely on same, at least until there were "any obvious indications that a protected communication or information ha[d] been produced inadvertently." *Explanatory Note*, FRE 502(b).

Turning next to the number and extent of the disclosures, the Court finds these factors to be neutral. As part of this litigation, the Borough Defendants have produced approximately 100,000 pages of documents, which represents a relatively substantial document production. *See Sensient*, 2009 WL 2905474, at *4 (finding that document production consisting of 47,000 documents reviewed with 45,000 documents (135,000 pages) produced was substantial). Given the size of the Borough Defendants' production, mistakes were bound to occur. *Id.* At issue here is the disclosure of 872 pages of documents, which represents only about 1% of the Borough Defendants' total production, which on a total percentage basis is notably small. Nevertheless, the Court finds that 872 pages of documents is not insignificant.

Moreover, the Court does not necessarily agree with the Borough Defendants that the extent of their disclosures should be based on their total document production. While that method was apparently used in *Sensient*, 2009 WL 2905474, at *4, and *Peterson*, 262 F.R.D. at 429, the Court in *Ciba-Geigy* focused not on the defendants' total production but on the 681 documents counsel had designated for use in two depositions. 916 F.Supp. at 407, 414. If the Court focuses more narrowly on the total number of documents produced on August 12, 2010 (approximately 26,000 pages) or even more so on only the Ryan/McKenna documents

(approximately 12,000 pages), the extent of the disclosure increases to approximately 3% or 7%

respectively, more significant figures.

Furthermore, even were the Court to focus solely on the Borough Defendants' disclosures

relative to the Borough Defendants' total document production, i.e., the 1% figure pressed by the

Borough Defendants, the Court would be mindful of the fact that the disclosures at issue in this

motion are not the only unintentional disclosures made by the Borough Defendants in this case.

Instead, though not at issue here, as part of their initial August 12, 2010 production, the Borough

Defendants also produced 728 pages of privileged Borough documents.  In addition, as in

*Peterson*, the Court would also be mindful of "the nature of the disclosures" at issue.  262 F.R.D.

at 429.

Here, the disclosures in question largely involve communications between the Borough

Defendants and their counsel in the legal issues underlying this lawsuit.  As in *Peterson*, these

communications "warranted a significant level of scrutiny."  *Id*. (finding that documents

representing exchanges between plaintiff and his attorney warranted significant level of scrutiny).

Thus, even assuming that the extent of the Borough Defendants' disclosures was quite small -

1% of their total document production - this fact would be balanced by the nature of the

disclosures at issue.  For these reasons, the Court finds that the number and extent of the

Borough Defendants' disclosures are neutral factors.

As to the Borough Defendants' efforts to rectify their disclosure of the privileged

Ryan/McKenna documents, the Court finds that the Borough Defendants did not take reasonable

steps to remedy their error.  In this regard, the Court finds that the Borough Defendants should

have been aware that something was amiss with their document production long before Plaintiff

relied on three privileged documents as part of his reply brief filed in further support of his motion for a preliminary injunction on January 12, 2012.  While FRE 502(b) "does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake[,]" it "does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." *Explanatory Note*, FRE 502(b).  As a result, once a producing party is "on notice that something [i]s amiss with its document production and privilege review[,]" then that party has an obligation to "promptly re-assess its procedures and re-check its production."  *Sensient*, 2009 WL 2905474, at * 5.  The Borough Defendants simply did not do so here, despite being provided with clear signs that something went awry with its document production and privilege review.

While a number of the seemingly unending problems the Borough Defendants experienced with their document production did not involve the disclosure of protected information, several did.  Indeed, as early as November 2010, the Borough Defendants were aware that protected information in the form of counsel's electronic comments had been produced to Plaintiff on the August 12, 2010 disc.  Yet this disclosure did not prompt the Borough Defendants to review the entirety of their August 12, 2010 production for other mistakes.  The Borough Defendants seem to suggest that such a review was unnecessary; though they do no provide much detail as to why.  The Court assumes that the Borough Defendants' position is based primarily on the fact that the inclusion of counsel's protected electronic comments would in no way indicate that actual documents that had been identified as privileged had also been erroneously included in their production.

24

The reasonableness of the Borough Defendants' decision not to re-review its August 12, 2010 production depends in part on the circumstances surrounding the inclusion of the electronic comments in the production.  The Court, however, has been provided with scant information in this regard.  Indeed, the Court does not know how counsel's electronic comments came to be produced on the August 12, 2010 disc, who was responsible for removing same prior to production, etc.  This information is certainly relevant because if the same clerical employee responsible for sorting the privileged Ryan/McKenna documents from the non-privileged documents was also responsible for removing the electronic comments, then the Borough Defendants would have had more reason to suspect that other mistakes occurred in the August 12, 2010 production based on the disclosure of counsel's electronic comments.  Regardless, the Court is willing to assume for purposes of this motion that the disclosure of counsel's electronic comments in the August 12, 2010 production would not, standing alone, reasonably put the Borough Defendants on notice that actual privileged documents may have been mistakenly produced to Plaintiff.

The disclosure of counsel's electronic comments, however, does not stand alone.  On December 3, 2010, the Borough Defendants produced their privilege log relevant to their production of the Borough and Ryan/McKenna documents.  That log included entries for 366 pages of privileged Ryan/McKenna documents.  Missing, however, were the 872 pages of unintentionally disclosed documents that are the subject of the instant motion.  In other words, approximately 70% of the material that should have been included on the Ryan/McKenna portion of the December 3, 2010 log was missing.

25

The Borough Defendants claim that they did not realize that their privilege log was missing "fewer" entries than should have been included given the sheer volume of their production and the passage of time from when counsel reviewed the Ryan/McKenna documents and when the privilege log was generated.  In the first instance, the Court notes that the privilege log is not simply missing "fewer" entries than should have been included; instead, the bulk of the entries are missing.[11]  While the volume of production and the passage of several months could certainly interfere with an attorney's recollection of exactly how many documents should have been logged, the Court is somewhat perplexed how counsel missed the fact that approximately 70% of the information that should have been included was not.

The Court is also somewhat perplexed how the simple difference between the number of pages logged for the Borough documents as compared to the number of pages logged for the Ryan/McKenna documents did not raise any flags for the Borough Defendants.  While the December 3, 2010 privilege log contains entries for 1389 pages of Borough documents, it only contains entries for 366 pages of Ryan/McKenna documents.  This disparity strikes the Court as odd in light of the fact that, while larger than the Ryan/McKenna production, the Borough production consisted of only 2 additional boxes of documents and, more importantly, the Ryan/McKenna documents were obtained directly from counsel involved in the legal matters

---

[11]Even if the Court were to consider the December 3, 2010 log in its entirety, as it pertains to both the Borough documents and Ryan/McKenna documents, a significant amount of information would be missing from same.  Indeed, the December 3, 2010 log included entries for 1753 pages of information, 1389 of which pertained to the Borough documents and 366 of which pertained to the Ryan/McKenna documents.  Missing from the log were 1600 pages of privileged information, 728 pages of privileged Borough documents and the 872 pages of Ryan/McKenna documents at issue here.  Consequently, as produced the December 3, 2010 log was missing almost half of the information that should have been included on same.

underlying this litigation, suggesting that they were equally likely, and, in reality, probably much more likely to involve privileged communications than the Borough documents.  Further, the Court notes that this disparity in number of pages logged  would have been self evident regardless of the passage of time or the volume of the Borough Defendants' document production.

The Court also has questions about how the Borough Defendants' December 3, 2010 privilege log was generated.  The Court understands that the partner who reviewed the Ryan/McKenna documents was not responsible for drafting the December 3, 2010 privilege log even as to the portion of the log pertaining to the Ryan/McKenna documents.  Instead, associates were responsible for creating the log in its entirety.  The Borough Defendants, however, do not provide much detail concerning the exact process used by the associates to create the privilege log.  For example, in generating the log entries pertaining to the Ryan/McKenna documents, did the associates reference the partner's detailed notes, which were initially used by the clerical employee to sort the privileged Ryan/McKenna documents from their non-privileged counterparts?  If not, why?  It would appear to the Court that those notes would have been invaluable to the creation of the December 3, 2010 privilege log.  Moreover, if the notes were utilized, how then could counsel possibly not realize that 872 pages of privileged Ryan/McKenna documents were mistakenly disclosed.

Based on the foregoing, the Court finds the Borough Defendants' position with respect to the December 3, 2010 privilege log, namely that nothing in their generation of same indicated that there was anything wrong with their document production or privilege review, to be somewhat questionable.  Nevertheless, as with the Borough Defendants' disclosure of their

counsel's electronic comments, the Court is willing to assume, for purposes of this motion, that nothing in the creation or the content of the December 3, 2010 privilege log, or more specifically the fact that numerous log entries were missing from same, would have put the Borough Defendants on notice that something was amiss with their document production and privilege review.  Consequently, the Court shall not find a waiver based on the Borough Defendants' failure to reexamine the August 12, 2010 production based on their generation of the December 3, 2010 privilege log.

Again, however, this does not represent the last discovery mishap experienced by the Borough Defendants involving the disclosure of protected information.  Instead, in March 2011, after having been informed by Plaintiff of organizational issues with the manner in which their documents appeared on the December 10, 2010 disc,[12] the Borough Defendants both realized that (1) Plaintiff was correct, the documents produced on the December 10, 2010 disc were disorganized; and (2) 728 pages of privileged Borough documents had been inadvertently disclosed.  It is this disclosure of 728 pages of privileged documents that is pertinent here.

Even completely discounting the fact that the December 3, 2010 privilege log was missing a significant portion of its entries, the Court finds that the combination of the inadvertently produced attorney electronic comments and 728 pages of privileged Borough documents should have put the Borough Defendants on notice that something had gone profoundly awry with their document production and privilege review.  Unlike the Borough

_____

[12]The Court notes that the December 10, 2010 disc was the disc generated by the Borough Defendants after being informed that their disc produced on November 4, 2010, which contained the Borough and Ryan/McKenna documents initially produced on August 12, 2010 albeit theoretically more efficiently organized and sans attorney electronic comments, was unreadable.

Defendants, the Court does not believe that it was reasonable for them to fail to fail to "re-review" the Ryan/McKenna portion of the December 10, 2010 disc "[b]ecause the partner knew she had personally reviewed each of the Ryan/McKenna documents for privilege, because that group of documents was unaffected by the glitch, and because Plaintiff had not advised of any problems with that group of documents[.]" (Borough Def. Reply at 4).

In reaching this conclusion, the Court notes that the fact that the computer glitch only affected the portion of the December 10, 2010 disc that contained the Borough documents is largely irrelevant as the glitch itself did not cause the Borough Defendants' privileged information to be disclosed.  Instead, the glitch merely caused the Borough Defendants to take a slightly closer look at their production of the Borough documents.  In doing so, the Borough Defendants realized that, despite their multi-attorney review during which counsel spent approximately 250 hours reviewing the Borough documents and Ryan-McKenna documents for responsiveness to Plaintiff's requests and privilege, 728 pages of privileged Borough documents had been disclosed.

In addition, the fact that the partner had personally reviewed each of the Ryan/McKenna documents for privilege whereas "associates had done a significant part" of the review of the Borough documents does not excuse the Borough Defendants' failure to recheck the entire production.  First, while associates may have conducted a significant portion of the review of the Borough documents, the partner also had some involvement with that review and there is no evidence that the partner was not responsible for reviewing any of the mistakenly disclosed Borough documents.  Second, and more importantly, the disclosure of the 728 pages of privileged Borough documents was not the first privilege-related error experienced by the

29

Borough Defendants with respect to information produced on the disc containing the Borough documents and Ryan/McKenna documents.  Instead, as previously stated, at the time the Borough Defendants learned that they had inadvertently produced 728 pages of privileged Borough documents (first on August 12, 2010, then again on November 4, 2010 and lastly on December 10, 2010), they had already also discovered that they had mistakenly produced counsel's protected electronic comments in the same production; though the electronic comments had been removed since November 4, 2010.

The Court finds that the problems experienced by the Borough Defendants with their production of the Borough documents and Ryan/McKenna documents would have spurred a reasonable person to recheck the entire contents of the December 10, 2010 disc.  Their failure to do so necessitates a finding that the Borough Defendants did not take prompt and reasonable steps to rectify its error.  This is true despite the fact that Plaintiff's counsel may have violated their ethical obligations under RPC 4.4(b) by failing to inform the Borough Defendants that privileged information had been produced.  Regardless of whether Plaintiff's counsel had an ethical responsibility under RPC 4.4(b) to inform the Borough Defendants that privileged information had been disclosed, once "a party is on notice of an error in its document production [that party] should not wait for its adversary to discover its error and then claim protection under FRE 502(b)." *Sensient*, 2009 WL 2905474, at *5, n.12.  Instead, once a party is on notice that "something [i]s amiss with its document production and privilege review[,]" that party must "promptly re-assess its procedures and re-check its production."  *Sensient*, 2009 WL 2905474, at *5.

The Court finds that how a party receives notice of its error is largely irrelevant: whether a party is informed by its adversary that privileged information has been inadvertently produced as in *Sensient* or whether the circumstances surrounding a party's production indicates that something has gone awry, as is the case here, is of little import.  Instead, the key is that once a party has notice that something is "amiss with its production and privilege review[,]" that party has an obligation to "promptly re-assess its procedures and re-check its production."  *Id*. at *5. As explained above, the Borough Defendants, despite being on notice that something was amiss with their production of the Borough documents and Ryan/McKenna documents, failed to promptly re-check their production of same.

Finally, the Court finds that under the circumstances of this case, the interests of justice favor finding that a waiver occurred.  While the Court agrees with the Borough Defendants that the relevance of the mistakenly produced Ryan/McKenna documents is not dispositive of the waiver issue (*Ciba-Geigy*, 916 F.Supp. at 414 (finding "[t]hat the documents are relevant and probative does not determine the waiver questions" (internal quotation marks and citation omitted)), the Court also finds however, much like in *Ciba-Geigy*, "the interests of justice would be served by a finding of waiver, where, as here, a party's negligence has resulted in the inadvertent production of a privileged document."  916 F.Supp. at 414; *see also  Peterson*, 262 F.R.D. at 429 (same) and *Sensient*, 2009 WL 2905474 at *5, n.12 (same).

In reaching this conclusion, the Court is aware that, here, Plaintiff did not inform the Borough Defendants that they had produced privileged material.  The Court is also aware that the Borough Defendants claim that, in failing to do so, Plaintiff's counsel violated their ethical obligations under RPC 4.4(b).

RPC 4.4(b) provides as follows:  "[a] lawyer who receives a document and has reasonable cause to believe that the document was inadvertently sent shall not read the document or, if he or she has begun to do so, shall stop reading the document, promptly notify the sender, and return the document to the sender."  Here, as the Borough Defendants note, there were obvious indications that at least some of the documents at issue in this motion were privileged.  Indeed, from the Court's *in camera* review it appears that at least 23 documents consisting of approximately 60 of the 872 pages of documents at issue in this motion bore a legend indicating that they were "PRIVILEGED AND CONFIDENTIAL" or "ATTORNEY/CLIENT CONFIDENTIAL" communications.[13]  In light of these explicit designations, the Court finds that Plaintiff should have known that he received privileged information from the Borough Defendants.  As a result, Plaintiff's counsel had an obligation under RPC 4.4(b) to, at a minimum, stop using the marked documents and return them to the Borough Defendants. Plaintiff's counsel did not do so.

Plaintiff's counsel never addresses the Borough Defendants' argument concerning RPC 4.4(b).  Indeed, Plaintiff's counsel does not even attempt to explain why he failed to direct the Borough Defendants to their disclosure of privileged information.  The Court is aware that Plaintiff in his pending motion to compel claims that several documents over which the Borough Defendants have made privilege claims, including a number of the Ryan/McKenna documents at issue here, have been improperly marked/withheld as privileged.  As a result, it is possible that Plaintiff reasonably believed that the Ryan/McKenna documents marked as "PRIVILEGED

---

[13]The legends may not have appeared exactly as depicted above, but were substantially similar to the two legends provided.

AND CONFIDENTIAL" and "ATTORNEY/CLIENT CONFIDENTIAL" had been purposefully disclosed by the Borough Defendants.  However, without a specific argument in this regard, the Court cannot excuse Plaintiff's counsel's failure to notify the Borough Defendants of their disclosure.  Consequently, it would appear that Plaintiff's counsel violated their duty under RPC 4.4(b).  This fact obviously weighs against finding that a waiver occurred.  Nevertheless, the Court on balance finds that this fact does not overcome the Borough Defendants failure to re-review their entire production after it became clear that there was something amiss with their document production and privilege review.  *Sensient*, 2009 WL 2905474 at *5.

As described above, at least as of March 2011 the Borough Defendants should have known that something went awry with their production and review of the documents initially produced on August 12, 2010.  At a minimum, at that point in time the Borough Defendants knew that the information initially produced on August 12, 2010, which included the Borough documents and Ryan/McKenna documents,  not only contained their attorneys' electronic comments, but also 728 pages of privileged Borough documents.  As explained above, these disclosures should have spurred the Borough Defendants to re-review their entire production of the Borough documents and Ryan/McKenna documents.  The Borough Defendants' failure to do so was unreasonable.  As a result, everything considered, the Court finds that the interests of justice favor finding that a waiver occurred.

The Court, however, also finds that the interests of justice favor imposing a waiver that is narrow in scope.  While the Court has determined that the Borough Defendants' disclosure of the privileged Ryan/McKenna documents was not inadvertent, meaning the Borough Defendants shall not be permitted to reclaim same, the Court has also determined that the Borough

Defendants' disclosure was unintentional.  Clearly, the Borough Defendants in unintentionally disclosing over 800 pages of otherwise privileged information were not attempting to use the attorney-client privilege as both a sword and a shield.  Indeed, this does not represent a case where a purposeful, selective disclosure was made.  As a result, the Court shall limit the waiver to the actual documents disclosed and shall not require a broad subject matter waiver.  *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 120-21 (D.N.J. 2002) (noting that "[t]he general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in the case of inadvertent disclosure, unless it is obvious that a party is attempting to gain an advantage or make offensive or unfair use of the disclosure" and finding that full subject matter waiver was not warranted) (internal quotation marks and citation omitted).

## III.    Conclusion

For the reasons set forth above, the Borough Defendants' motion for discovery to reclaim inadvertently produced privileged documents is DENIED.  An appropriate Order follows.


Dated: May 30, 2012

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

34